2011 ME 56

**Jennifer (Colman) JACOBI**

v.

**MMG INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued: April 12, 2011.

Decided: May 10, 2011.

Lance E. Walker, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for MMG Insurance Company.

Mark L. Randall, Esq. (orally), Randall Law Office, P.A., Portland, ME, for Jennifer (Colman) Jacobi.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] MMG Insurance Company appeals from a summary judgment entered in the Superior Court (Hancock County, *Cuddy, J.*) in favor of Jennifer (Colman) Jacobi in her reach and apply action, 24–A M.R.S. § 2904 (2010),[1] and from the court's denial of MMG's cross-motion for summary judgment. MMG argues that the court erred in interpreting the MMG homeowners insurance policy to provide coverage for injuries caused by MMG's insured because all claims in the underlying lawsuit arose out of sexual molestation and the policy at issue excludes coverage for injuries arising out of sexual molestation and for injuries that are expected or intended by an insured.

[¶ 2] Because the MMG homeowners insurance policy excludes coverage for the claims on which damages were awarded in the underlying lawsuit, we vacate the judgment and remand for entry of judgment for MMG.

## I. CASE HISTORY

### A. The Underlying Lawsuit

[¶ 3] In September 2006, Jennifer (Colman) Jacobi rented a home in Blue Hill from Barbara Bennett.[2] Jacobi lived at the home with her then seven-year-old daughter. Bennett left for New Mexico, but Bennett's seventeen-year-old son remained in Blue Hill, living in an in-law apartment attached to the home that Jacobi rented. The son repeatedly sexually assaulted Jacobi's daughter from September 2006 to November 2006. Jacobi learned of the assaults in January 2007 and reported the abuse to the police. Jacobi informed Bennett two weeks later of the assaults and that the police had been notified.

[¶ 4] In March 2007, Bennett sent Jacobi an eviction notice for non-payment of rent. The eviction notice caused Jacobi to have to seek alternate housing for her and her daughter at a time when she was "preoccupied with caring for her daughter and attending to her daughter's needs."

[¶ 5] Jacobi filed a five-count complaint, individually and on behalf of her minor daughter, against Bennett alleging premises liability, intentional infliction of emotional distress, negligent infliction of emotional distress, punitive damages, and loss of services of a minor child.[3] Jacobi based her claim for intentional infliction of emotional distress upon Bennett's "notif[ying] [Jacobi] of her intention to evict [Jacobi and her daughter] from the rental property, forcing [them] to find alternative living arrangements at a time when [Jacobi] was busy attending to her daughter's needs." Jacobi based her claim for negligent infliction of emotional distress on two allegations: (1) Bennett "knew or should have known that her failure to provide [Jacobi and her daughter] with secure and

1. Title 24–A M.R.S. § 2904 (2010) provides in relevant part:

    Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage.

2. These facts are taken from Jacobi's complaint against Bennett, which are deemed adjudicated facts because Bennett failed to file an answer and was defaulted, *see McAlister v. Slosberg*, 658 A.2d 658, 660 (Me.1995), and from the court's judgment in the underlying matter.

3. The complaint did not include a count for wrongful eviction.

safe premises would cause [them] to suffer severe emotional distress," and (2) Bennett "knew or should have known that evicting [Jacobi and her daughter] at a time when [the] daughter was recovering from injuries and damages perpetrated by [Bennett's] son, would cause [Jacobi and her daughter] to suffer severe emotional distress."

[¶ 6] Bennett was insured under a homeowners insurance policy (the Policy) issued by MMG Insurance Company at the time of the events giving rise to the complaint. Bennett's son was also "an insured" under the terms of the Policy.

[¶ 7] MMG was notified of Jacobi's suit against Bennett. MMG informed Bennett that it would not defend the action or indemnify her on the grounds that the Policy contained an exclusion for claims arising from sexual abuse and therefore did not provide coverage for Jacobi's claims. Bennett failed to file an answer in the underlying action and a default was entered against her.

[¶ 8] The court held a hearing to decide causation and damages at which Jacobi and a counselor testified. Following the hearing, the court determined that no damages would be awarded for the counts addressing premises liability, punitive damages, and loss of services of a minor child. The court concluded that Jacobi had proved damages for "emotional distress"—apparently referring to both intentional and negligent infliction of emotional distress—for which it awarded $100,000 to Jacobi's daughter and $30,000 to Jacobi "as compensation for emotional distress as well as past and future anticipated counseling and related expenses."

B. The Pending Action

[¶ 9] Following entry of judgment in the underlying lawsuit against the homeowner, Jacobi filed a complaint, individually and on behalf of her daughter, against MMG seeking to collect, pursuant to Maine's reach and apply statute, 24–A M.R.S. § 2904, the judgment obtained against Bennett.

[¶ 10] Pursuant to the Policy, Bennett has $300,000 in coverage per occurrence for personal liability due to "bodily injury." A covered "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in ... 'Bodily injury.'" "Bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services, and death that results." The Policy, however, excludes from coverage "bodily injury" (1) "[w]hich is expected or intended by one or more 'insureds'"; or (2) "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse."

[¶ 11] Under an endorsement to the Policy (the Personal Injury Endorsement), the definition of "bodily injury" is expanded to include "personal injury," which in turn means "injury arising out of one or more of the following offenses: ... wrongful eviction." While the parties dispute whether the Personal Injury Endorsement to the Policy was properly invoked to extend coverage for wrongful eviction, we assume for purposes of this appeal that coverage was extended for wrongful eviction. However, the Personal Injury Endorsement does not apply to "[i]njury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an 'insured.'"

[¶ 12] The parties filed cross-motions for summary judgment. After a hearing, the court granted Jacobi's motion and denied MMG's motion. The court concluded that the underlying judgment in favor of Jacobi against Bennett awarded Jacobi damages for emotional distress resulting from Jacobi's being "wrongfully evict[ed],"

as well as for emotional distress resulting from the sexual abuse, and that the damages could not be apportioned as between the two claims because the eviction process aggravated the pre-existing injuries resulting from the sexual assaults. The court concluded that, because there were "multiple causes of damages alleged," one of which was not excluded under the Policy, Jacobi's reach and apply action was an appropriate remedy.

[¶ 13] MMG filed a motion to alter or amend the judgment, which was denied. MMG then brought this appeal.

## II. LEGAL ANALYSIS

[¶ 14] In applying the reach and apply statute, 24–A M.R.S. § 2904, we look to the basis for liability and damages that has been asserted in the underlying complaint and found in the underlying judgment. We then look to the homeowners insurance policy to determine if any of the damages awarded in the underlying judgment are based on claims that would be recoverable pursuant to the homeowners policy. *See Pelkey v. Gen. Elec. Capital Assur. Co.,* 2002 ME 142, ¶ 10, 804 A.2d 385, 387. Although any ambiguities in an insurance contract are construed in favor of coverage, *Korhonen v. Allstate Ins. Co.,* 2003 ME 77, ¶ 9, 827 A.2d 833, 836, the party seeking to recover pursuant to the reach and apply statute, here Jacobi, has the burden to demonstrate that her awarded damages fall within the scope of the insurance contract. *See Pelkey,* 2002 ME 142, ¶ 10, 804 A.2d at 387. Thus, Jacobi must demonstrate that the damages awarded by the court for intentional infliction of emotional distress or for negligent infliction of emotional distress are covered by the Policy, despite the intentional act and sexual molestation exclusions.

### A. Intentional Infliction of Emotional Distress

[¶ 15] The MMG Policy excludes from coverage "bodily injury ... [w]hich is expected or intended by one or more 'insureds.'"

[¶ 16] This Policy exclusion precludes coverage for Jacobi's intentional infliction of emotional distress claim because the allegations giving rise to that claim demonstrate intentional conduct, "the natural object of which is to cause emotional distress." *Korhonen,* 2003 ME 77, ¶¶ 17–18, 827 A.2d at 839; *see also Curtis v. Porter,* 2001 ME 158, ¶ 10, 784 A.2d 18, 22–23 (discussing the elements of intentional infliction of emotional distress claims). Jacobi does not dispute that this intentional act exclusion precludes her recovery based on her intentional infliction of emotional distress claim standing alone.

### B. Negligent Infliction of Emotional Distress

[¶ 17] Negligence that causes bodily injury or personal injury is considered accidental and thus not an injury expected or intended by the insured. *See Hanover Ins. Co. v. Crocker,* 1997 ME 19, ¶ 7, 688 A.2d 928, 931. However, recovery for negligent infliction of emotional distress requires proof not only of negligence and emotional distress, but also, absent "bystander liability" or special relationship cases, some other separate, independent tort that is the cause of the emotional distress. *See Curtis,* 2001 ME 158, ¶ 19, 784 A.2d at 25–26; *Richards v. Town of Eliot,* 2001 ME 132, ¶ 34, 780 A.2d 281, 293; *see also Packard v. Central Me. Power Co.,* 477 A.2d 264, 268 (Me.1984). That independent tort cannot be the sexual abuse, because the Policy bans recovery for any damages "arising out of sexual molestation."

[¶ 18] Jacobi contends that she can recover for negligent infliction of emotional distress based on the separate, independent tort of intentional infliction of emotional distress because her recovery would be based on the finding of negligence and not the finding of intentional action. However, any recovery of damages based on the tort of intentional infliction of emotional distress is recovery for an injury "expected or intended" by one or more insureds that is excluded from coverage by the express terms of the Policy. *See generally Curtis,* 2001 ME 158, ¶¶ 19, 22, 784 A.2d at 26 (stating that when the separate tort at issue, such as intentional infliction of emotional distress, allows one to recover for emotional suffering, a claim for negligent infliction of emotional distress is usually subsumed in an award entered on the separate tort).

[¶ 19] Separately, Jacobi contends that the recovery was based on what Jacobi asserts was a wrongful eviction. Jacobi did not plead a claim for wrongful eviction against Bennett. In support of this claim in the reach and apply action, Jacobi does not argue that Bennett violated any statutory or common law duty of care by evicting her tenants and is unable to point to any statute that was violated by the eviction process. Instead, as Jacobi clarified at oral argument, she asserts that the eviction was improper because it was bad manners or in poor taste to evict someone who was undergoing a difficult time in her life. But poor manners that do not constitute a violation of a statutory or common law duty do not create an actionable, independent tort of wrongful eviction that can serve as a basis for recovery of damages for negligent infliction of emotional distress.[4]

[¶ 20] Accordingly, there was no basis for recovery of damages for negligent infliction of emotional distress independent of the intentional acts or the sexual misconduct excluded from coverage by the terms of the Policy. MMG was entitled to summary judgment on the undisputed facts before the court.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment for MMG Insurance Company in the reach and apply action.

---

4. For purposes of this opinion, we accept Jacobi's argument that wrongful eviction may be an actionable tort. However, wrongful eviction is, in essence, a claim for breach of an express or implied rental contract. The Personal Injury Endorsement does not extend coverage in this case because some of the circumstances listed in that endorsement, including "wrongful eviction," were not pleaded and/or proved in the underlying action.